## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NINO ("NINA") BREGVADZE, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br><br>WATER WIPES (USA) INC., 155 Fleet Street, Suite 2, Portsmouth, New Hampshire 03801<br><br>        Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

## <u>PREAMBLE</u>

Plaintiff Nino ("Nina") Bregvadze ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant WaterWipes (USA), Inc. ("WaterWipes" or "Defendant") regarding the false and deceptive marketing and sale of its Plastic-Free Original Baby Wipes (the "Product"). WaterWipes represents to consumers that its Product is "plastic-free" and "the world's purest baby wipes." Testing, however, reveals that the Product contains significant levels of microplastics, exposure to which can cause a range of harmful human health consequences—especially when exposure begins at a young age. The presence of microplastics is especially concerning considering that the Product is meant for use on newborns and young children, that children are more vulnerable to exposure to microplastics, and that microplastics build up over time and accumulate in the body, increasing the risk of disease later in life.

Defendant WaterWipes' conduct violates business and state consumer protection laws, constitutes a breach of express and implied warranties, and results in unjust enrichment. Plaintiff

Bregvadze alleges the following based upon the investigation of her counsel and upon information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## INTRODUCTION

1.      WaterWipes markets and sells its Product[1] in New York.

2.      According to its own website, WaterWipes is a "global business," selling its Product in over 50 countries.[2]

3.      On the Product packaging, WaterWipes represents that the Product is "Plastic-Free," has "just 2 ingredients," and are "the world's purest baby wipes."

4.      Via WaterWipes' consumer-facing website, WaterWipes represents itself as a company committed to "purity" and "quality" through its "plant-based and plastics free" baby wipes.

5.      The same website represents that WaterWipes' Product is "suitable for sensitive, newborn, and premature baby skin."

6.      The WaterWipes website and on-package representations at issue in this action are accessible to consumers in New York and nationwide.

7.      Consumers within New York and across the country believe that plastic pollution—particularly through microplastics—presents significant harm to human health and the environment.

8.      Consumers within New York and across the country are also interested in products

---

[1] Plaintiff alleges that any WaterWipes products that contain microplastics are within the scope of this Complaint. Plaintiff reserves the right to add future Products as a result of further discovery.
[2] *About Us*, WaterWipes, https://www.waterwipes.com/our-story (last visited Mar. 26, 2025).

that are better for their health and are increasingly concerned about what they knowingly—and unknowingly—absorb through their skin.

9.      Further, consumers within New York and across the country are increasingly worried about the products, substances, and chemicals they expose to newborns and young children.

10.     Due to these concerns, many consumers are reevaluating their purchasing choices and the effects of those choices on their health, their families' health, and the environment.

11.     Because of growing concerns about environmental and human health harms, consumers are willing to seek out less harmful services or products. Consumers prefer to support companies that protect their health and share their values, including a commitment to reducing impact on the environment and protecting the health of newborns and young children.

12.     For these reasons, it is increasingly beneficial for companies that sell products for use with newborns, babies, and young children to advertise themselves as "plastic-free," "pure," and "safe," despite the reality that their products contain microplastics.

13.     Microplastics have become increasingly pervasive, with recent studies finding microplastics in every human placenta and testicle studied,[3] as well as in every blood sample taken.[4]

14.     Plastic pollution is now so widespread that a 2019 study commissioned by World

---

[3] Damian Carrington, *Microplastics Found in Every Human Testicle in Study*, The Guardian (May 20, 2024, 10:34 EDT), https://www.theguardian.com/environment/article/2024/may/20/microplastics-human-testicles-study-sperm-counts; Michael Haederle, *Microplastics in Every Human Placenta, New UNM Health Sciences Research Discovers*, UNM Health Sciences Newsroom (Feb. 20, 2024), https://hsc.unm.edu/news/2024/02/hsc-newsroom-post-microplastics.html.

[4] *Microplastics Found in Human Hearts*, Plastic Pollution Coalition (Mar. 7, 2024), https://www.plasticpollutioncoalition.org/blog/2023/8/18/microplastics-found-in-human-hearts.

Wildlife Fund International estimated that the average person could be consuming upwards of 5 grams of plastic every week, which is equivalent to roughly the weight of an entire credit card.[5]

15.    Once microplastics enter the bloodstream, they can spread all throughout the body. These microplastics put stress on the body's immune system and have been found to increase the rate at which cancer cells spread.[6]

16.    Research has found that microplastics exposure, even in low doses, during the early developmental stage can induce long-term and devastating health effects, including higher likelihoods of illness later in life.[7]

17.    Further, newborns and young children are more susceptible to microplastic absorption through the skin because their most superficial layer of skin is thinner and more permeable compared to adults.[8]

18.    Lastly, exposure to microplastics in infancy induces numerous changes to the digestive, reproductive, central nervous, immune, and circulatory systems of children, which can have negative health consequences later in life.[9]

19.    Contrary to WaterWipes' marketing representations to consumers, its Product is exposing newborns to significant levels of microplastics.

20.    Testing through an independent third-party lab revealed the presence of

---

[5] *You May be Eating a Credit Card's Worth of Plastic Each Week: Study*, Reuters (June 11, 2019, 9:29 PM EDT), https://www.reuters.com/article/us-environment-plastic/you-may-be-eating-a-credit-cards-worth-of-plastic-each-week-study-idUSKCN1TD009.

[6] Simon Ducroquet & Shannon Osaka, *The Plastics We Breathe*, The Washington Post (June 10, 2024, 5:00 AM), https://www.washingtonpost.com/climate-environment/interactive/2024/microplastics-air-human-body-organs-spread/.

[7] Nur Hanisah Amran et. al., *Exposure to Microplastics during Early Developmental Stage: Review of Current Evidence*, 10 Toxics 597, 597 (Oct. 10, 2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9611505/.

[8] *Id.*

[9] *Id.*

microplastic in the Product at levels 387x the level of microplastic particles in the control (laboratory grade isopropyl alcohol).

21.    No reasonable consumer who sees WaterWipes' representations would expect that its Product exposes them, their babies, or their family to microplastics.

22.    WaterWipes promotes its Product as "plant-based" and "plastic free" on its Product packaging and website, despite the fact that microplastics have been found in WaterWipes' Product.

23.    By misrepresenting the nature and quality of its Product, WaterWipes is able to capture the growing market of consumers who are concerned about plastic pollution and seek to support businesses with practices that are friendly to the environment and human health.

24.    WaterWipes' false and misleading representations and material omissions violate business and state consumer protection laws, constitute a breach of express and implied warranties of merchantability, and result in unjust enrichment.

25.    Plaintiff Bregvadze brings this class action on behalf of herself, and all others similarly situated, seeking equitable and monetary relief.

## PARTIES

26.    Defendant WaterWipes is a company specializing in premium baby wipes.

27.    Defendant is incorporated and headquartered in New Hampshire.

28.    Defendant markets and sells the Product in stores and online in New York and throughout the country.

29.    Plaintiff Bregvadze is a citizen of the State of New York and a resident of Westchester County.

30.    Plaintiff Bregvadze purchased the WaterWipes Plastic-Free Original Baby Wipes Product in 2023 and routinely every two weeks for three months in 2024.

31.    Plaintiff Bregvadze purchased the Product in Westchester County, New York. Plaintiff purchased the Product at the following locations: Stop and Shop, 390 Broadway, Dobbs Ferry, NY 10522; Rite Aid, 871 Saw Mill River Road, Ardsley, NY 10502; CVS, 725 Saw Mill River Road, Ardsley, NY 10502.

32.    Plaintiff Bregvadze was attracted to the Product because of the Product packaging which stated that the Product was "plastic free," "the world's purest baby wipes," and contained "just 2 ingredients"—99.9% water and "a drop of fruit extract."

33.    Plaintiff Bregvadze, at the time of purchase, saw the Product's labeling and believed it was safe and free from microplastics.

## JURISDICTION AND VENUE

34.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act.  There are more than 100 members in the proposed class. Plaintiff is a citizen of New York and consents to this Court's jurisdiction. Defendant has its principal place of business in New Hampshire.

35.    The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

36.    This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

37.    Defendant has sufficient minimum contacts with New York to establish personal jurisdiction of this Court over them because, *inter alia*, they engage in deceptive schemes and acts

directed at persons residing in, located in, or doing business in New York, or otherwise purposefully avails themselves of the laws of New York through their marketing and sales there.

38.    Defendant markets to consumers within New York. The Product can be, and is, purchased in New York by consumers, who have access to WaterWipes' marketing and on-label representations about the Product, both online and in stores on the Products' packaging.

39.    Defendant operates a dedicated interactive website that specifically targets New York consumers by featuring a store locator function, designed to guide residents to retailers within New York where the Product is sold. Shown below is a screenshot from the website highlighting these New York store locations.



40.    Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading marketing and advertising regarding the nature of the Products and sales of the Products at issue,

---

[10] *Where To Buy*, WaterWipes, https://www.waterwipes.com/where-to-buy (last visited Mar. 26, 2025).

occurred within this District.

## FACT ALLEGATIONS

**I.    Defendant Makes False and Deceptive Representations About the Plastic Content of Its Product.**

41.    Defendant WaterWipes makes affirmative on-package representations about the

safety of its Product—namely, that they are "plastic free" and are "the world's purest baby wipes."



42.    WaterWipes also makes on-package representations that its Product contains "just

2 ingredients"—99.9% water and "a drop of fruit extract."

CLASS ACTION COMPLAINT



43.     On its website during the Class Period (defined *infra* ¶ 71), WaterWipes stated that its "original wipe remains the ***world's purest baby wipe,*** but are now ***plastic free"*** and continues to make similar representations. [11]

44.     WaterWipes' social media page also states that the Product is "100% plastic-free."[12]



[11]     *Our Products*, WaterWipes, https://www.waterwipes.com/products [https://web.archive.org/web/20241202095330/https://www.waterwipes.com/products] (last visited Mar. 26, 2025); *see also Environment*, WaterWipes, https://www.waterwipes.com/environment (last visited Mar. 26, 2025) (stating that Product is "plastic free").

[12]     WaterWipes (@waterwipes), Instagram (Oct. 13, 2021), https://www.instagram.com/p/CU-FtjaMfO5/?img_index=1.

CLASS ACTION COMPLAINT

45.    WaterWipes also claims that the Product is "suitable for sensitive, newborn and premature baby skin."[13]



46.    WaterWipes also represents that its Product is "purer than cloth and water."[14]

---

[13] *Our Products*, *supra* note 11.
[14] Marie-Louise, *Umbilical Cord Care*, WaterWipes, https://www.waterwipes.com/skincarehub/umbilical-cord-care (last visited Mar. 26, 2025).

47.     Further, during the Class Period, *infra* ¶ 71, WaterWipes touted several benefits of its decision to go "plastic free," including saving "228,594,728 plastic bottles a year," "3.28 Olympic-sized swimming pools of water," and "2.039 tonnes of packaging waste."[15]



48.     WaterWipes' disclaimer that "the claim does not refer to the full product lifecycle nor the external plastic packaging and relates to the ***wipes only***"[16] does little to evade responsibility for its misleading claims because it is, in fact, the ***wipes themselves*** that have been found to contain microplastics.

49.     Despite the presence of microplastics in the Product, WaterWipes represents to consumers that they are "the safest baby wipes on the market."[17]

50.     The representations made by WaterWipes, are intended to, and do, lead consumers to believe that the Product is safe, and free from substances that are harmful to human health. In

---

[15] *Our Wipes Are Now Plant-based and Plastic Free*, WaterWipes, https://www.waterwipes.com/health-care/waterwipes-is-now-plastic-free
[https://web.archive.org/web/20241113013246/https://www.waterwipes.com/health-care/waterwipes-is-now-plastic-free] (last visited Mar. 26, 2025).
[16] *Id.*
[17] *The Science & Safety of WaterWipes Products*, WaterWipes, https://www.waterwipes.com/skincarehub/waterwipes-science-safety (last visited Mar. 26, 2025).

reality, the Product contains microplastics, which accumulate in the body and lead to extensive potential negative health impacts.

## II.    Defendant's Representations are Material to Consumers.

51.    WaterWipes' representations that its Product is safe and free from plastics are material to consumers who care about making environmentally conscious and health-conscious purchasing decisions.

52.    Baby safety in particular remains a top concern for parents, with the global market for baby safety products at an estimated value of $255.83 billion in 2024.[18]

53.    One study found that "61% of Americans are concerned about the products they put in, on and around their bodies" and "81% assume the personal care products they use adhere to strict quality and safety standards."[19]

54.    Other research has found that "[c]onsumers want brands and retailers to be more transparent and open about their products."[20] In fact, "1 in 3 U.S. consumers use online resources to see how ingredients are sourced."[21] Also, "72% of U.S. shoppers said brand transparency is 'extremely important' or 'important.'"[22]

---

[18] Nicholas Morine, *Parents Seeking Safety, Value, and a Return to Nature When Buying Products for Their Babies*, RetailWire (Jan. 3, 2025), https://retailwire.com/parents-safety-value-products-babies/.
[19] *Most Americans Are Concerned About the Safety of Many Consumer Products – Yet Few Research Claims*, NSF (May 16, 2019), https://www.nsf.org/news/most-americans-are-concerned-about-the-safety-of-many-consumer-products.
[20] Elizabeth Christenson, *Transparency Influences Shopper's Beauty, Personal Care Purchases*, Drug Store News (Nov. 15, 2022), https://drugstorenews.com/transparency-influences-shoppers-beauty-personal-care-purchases.
[21] *Id.*
[22] *Id.*

55.    Here, Defendant is selling a Product meant to be used on newborns and young children[23] and makes specific representations about the plastic content—or supposed lack thereof—in its Product. Thus, Defendant's representations are material to consumers.



### III.    Despite Defendant's Representations, the Product Contains Significant Levels of Microplastics, Posing a Significant Risk to Newborn Health.

56.    Testing facilitated by Plaintiff's counsel and conducted by an independent laboratory found microplastics in the Products at levels 387x the level of microplastic particles in the control (laboratory grade isopropyl alcohol). The testing information is as follows:

**Product Tested:** WaterWipes Original Baby Wipes

**Test Period:** September 27, 2024 to December 16, 2024.

**Laboratory:** Parverio Inc., located in West Henrietta, NY.

**Methodology:** The lab filtered the water from the sample to capture debris particles suspended in the liquid (8 μm slits), performed in a laminar flow hood. The lab then stained the sample with a fluorescent dye to identify which of the small microparticulates were plastic and washed away the residue. Larger fibers and particles are separated automatically into smaller particles through an operation known as watershedding. This operation permits the separation of particles that are adjacent into individual particles, however, larger fibers are separated into smaller particles for counting purposes.

---

[23] *See, e.g., WaterWipes*, https://www.waterwipes.com/ (last visited Mar. 26, 2025) (suggesting that consumers "Add [the Product] to [their] Baby Registry")

57.     The testing showed that there were microplastics found ***throughout*** the Product, not just in the top wipe but also further down the stack.

58.     Microplastics are any plastics less than five millimeters in length that come from larger plastic debris that degrades into smaller pieces over time.[24]

59.     Microplastics have been shown to leach hazardous chemicals, and have been linked to cancer, weakened immune systems, endocrine and reproductive problems, nervous system problems, hearing loss, and metabolic disturbances, among other harmful health effects.[25]

60.     Microplastics exposure, even in low doses, during the early developmental stage can induce long-term and devastating health effects.[26]

61.     These hazardous substances are particularly harmful to "pregnant people . . . and in babies, children, and youth whose hormone systems are [] extremely active to guide healthy growth and development."[27]

62.     Microplastics exposure during the neonatal period is linked to the development of multiple illnesses in adulthood.[28]

63.     Microplastics can be inhaled through the respiratory system as well as absorbed through the skin.[29]

---

[24] Vedant Sharma, *Microplastic: A Potentially Silent But Deadly Killer*, Pre-Collegiate Global Health Review (Oct. 14, 2021), https://www.pghr.org/post/microplastic-a-potentially-silent-but-deadly-killer.
[25] *Id.*; Yage Li et al., *Leaching of Chemicals from Microplastics: A Review of Chemical Types, Leaching Mechanisms and Influencing Factors,* Sci. Total Env't (Oct. 15, 2023), https://pubmed.ncbi.nlm.nih.gov/37820817/.
[26] Nur Hanisah Amran et. al., *supra* note 7.
[27] *From Womb to World, Plastics Harm Babies: How to Protect Their Health*, Plastic Pollution Coalition (May 12, 2024), https://www.plasticpollutioncoalition.org/blog/2024/5/12/from-womb-to-world-plastics-harm-babies.
[28] Nur Hanisah Amran et. al., *supra* note 7.
[29] *Id.*

14
CLASS ACTION COMPLAINT

64.    Newborns and young children are more susceptible to microplastic absorption through the skin because their most superficial layer of skin is thinner and more permeable compared to adults.[30]

65.    Exposure to microplastics in infancy induces numerous changes to the digestive, reproductive, central nervous, immune, and circulatory systems of children, which can have negative health consequences later in life.[31]

**IV.    Defendant Is Misleading Consumers About Its Product.**

66.    Consumers see WaterWipes' assurances about the absence of plastic in its Product and reasonably believe that the Product would not contain and subsequently expose them or their children to any level of microplastics, which accumulate in the body and lead to extensive negative health impacts later in life.

67.    Yet, testing shows that the Product contains microplastics.

68.    WaterWipes states that the packaging may still contain plastics, but omits the fact that the Product itself may also contain microplastics from its marketing materials.

69.    Reasonable consumers are not in a position to access or use the sophisticated testing equipment necessary to discover whether microplastics exist in the Product. Consumers must, and do, rely on Defendant's marketing, which Defendant knows and uses to its advantage.

## <u>CLASS ALLEGATIONS</u>

70.    Plaintiff Bregvadze re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

---

[30] *Id.*
[31] *Id.*

71.    Plaintiff Bregvadze brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals within the United States (the "Class"), defined as follows: all consumers who purchased the Product within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

72.    Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Product in New York during the Class Period (the "New York Subclass").

73.    Excluded from the Class are (1) Defendant, any entity or division in which the Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

74.    There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)    Whether Defendant is responsible for the marketing at issue;

(b)    Whether the marketing of the Product was unfair, misleading, false, deceptive, and/or unlawful;

(c)    Whether the sale of the Product was unfair, misleading, false, deceptive, and/or unlawful;

(d)    Whether Defendant was unjustly enriched; and

(e)    Whether Defendant's conduct as set forth above injured Plaintiff Bregvadze and Class members.

75.    Plaintiff Bregvadze's claims are typical of the claims of the Class. Plaintiff Bregvadze is a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by Defendant's conduct and are owed the same relief, as alleged

in this Complaint.

76.    The precise number of the Class members and their identities are unknown to Plaintiff Bregvadze at this time but may be determined through discovery.

77.    Plaintiff Bregvadze will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiff Bregvadze will vigorously pursue the claims of the Class and Subclass.

78.    Plaintiff Bregvadze has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff Bregvadze's counsel have successfully represented plaintiffs in complex class actions and currently represent plaintiffs in similar complex class action lawsuits involving false advertising.

79.    A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Bregvadze and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

80.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Bregvadze's and the Class members' claims

together is manageable.

81.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

82.     The prerequisites to maintaining a class action for equitable relief are met. WaterWipes represents to consumers that its Product is "plastic-free" and "the world's purest baby wipes." Testing, however, reveals that the Product contains significant levels of microplastics, exposure to which can cause a range of harmful human health consequences—especially when exposure begins at a young age. Defendant has, therefore, acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

83.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

84.     Defendant's conduct is generally applicable to the Class as a whole, and Plaintiff Bregvadze seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief appropriate with respect to the Class as a whole.

85.     Defendant's improper consumer-oriented conduct is misleading in a material way in that the marketing, *inter alia*, induced Plaintiff Bregvadze and Class members to purchase, purchase more of, and/or paid more for the Product than they would have had they not been deceived by the representations.

86.    Defendant made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

87.    Plaintiff Bregvadze, the Subclass members, and the Class members have been injured by their purchase of the Product, which they otherwise would not have purchased and would not be continuing to use, which were worth less than what they bargained and/or paid for, which they paid the requested price for, and which they selected over other products that may have been truthfully marketed.

88.    As a direct and proximate result of Defendant's violation of law, Plaintiff Bregvadze and members of the New York Subclass, and all Class members paid for the falsely advertised Product and, as such, have suffered damages in an amount to be determined at trial.

89.    Plaintiff Bregvadze knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
### Violations of the New York General Business Law § 349
### (On Behalf of Plaintiff Bregvadze and the New York Subclass)

90.    Plaintiff Bregvadze realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

91.    The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

92.    Defendant represents to consumers that its Product is "plastic-free" and "the world's purest baby wipes." Testing, however, reveals that the Product contains significant levels of microplastics, exposure to which can cause a range of harmful human health consequences—

especially when exposure begins at a young age.

93.    Defendant made the misleading statements, representations, and advertisements willfully, wantonly, and with reckless disregard for the truth.

94.    Defendant has violated section 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of section 349, Plaintiff Bregvadze and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

95.    By reason of the foregoing, Plaintiff Bregvadze and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

## COUNT II
### Violations of the New York General Business Law § 350
### (On Behalf of Plaintiff and the New York Subclass)

96.    Plaintiff Bregvadze realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

97.    The acts of Defendant, as described above, and each of them, constitute false advertising in that each is misleading in material respects as described *supra*.

98.    New York General Business Law section 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

99.    NYGBL section 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

100.    Defendant made the false statements willfully, wantonly, and with reckless disregard for the truth.

101.    Plaintiff Bregvadze and the New York Subclass members have been injured by their purchase of the Product. As a direct and proximate result of Defendant's violation of section 350, Plaintiff Bregvadze and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

102.    On February 14, 2025, a pre-suit letter was sent to the Defendant via certified mail that provided notice of the violations of state consumer protection statutes and demanded that within thirty (30) days from the date of the letter, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if the Defendant refused to do so, a complaint seeking damages would be filed. Defendant received the letter but has failed to take corrective action.

103.    Accordingly, Plaintiff Bregvadze, on behalf of herself and all other members of the New York Subclass, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

### COUNT III
**Violation of State Consumer Protection Statutes**
**(on Behalf of Plaintiff Bregvadze and All Class Members)**

104.    Plaintiff Bregvadze realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

105.    Defendant's unfair, false, misleading, and fraudulent practices in marketing the Product, as alleged herein violate each of the following state consumer protection statutes to the extent that Defendant's Product has been marketed in, and purchased by Class members in, the

respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§ 17200, 17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); § 13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

106.    Defendant made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

107.    Plaintiff Bregvadze and all Class members have been injured by their purchase of the Product.

108.    As a direct and proximate result of Defendant's violation of consumer protection law, Plaintiff Bregvadze and all other Class members have suffered damages in an amount to be determined at trial.

109.    On February 14, 2025, a pre-suit letter was sent to the Defendant via certified mail that provided notice of Defendant's violations of state consumer protection statutes and demanded that within thirty (30) days from the date of the letter, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint seeking damages would be filed. Defendant received the letter but has failed to take corrective action. Accordingly, Bregvadze, on behalf of herself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices, according to the availability of relief under the applicable statutes.

## COUNT IV
### Breach of Express Warranty of Merchantability
### (on Behalf of Plaintiff Bregvadze and All Class Members)

110.    Plaintiff Bregvadze realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

111.    Defendant expressly warranted to consumers that its Product was "plastic-free" and "the world's purest baby wipes." These statements constituted affirmations of fact and promises about the nature and quality of the Product, forming the basis of the bargain with consumers.

112.    Testing, however, reveals that the Product contains significant levels of microplastics, directly contradicting Defendant's express representations.

113.    Because the Product fails to conform to WaterWipes' express warranties, Defendant has breached its express warranty obligations under common law principles recognized in all states. As a result of this breach, consumers who relied on these representations when purchasing the Product have suffered harm, including economic injury from purchasing a product that does not meet the promised quality and safety standards.

114.    Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they either would not have purchased the Product, would have purchased less of the Product, or would not have been willing to pay the premium price Defendant charged for the Product.

115.    Plaintiff, on behalf of herself and the Class, seeks compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
**(on Behalf of Plaintiff Bregvadze and All Class Members)**

116.    Plaintiff Bregvadze realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

117.    Defendant impliedly warranted via representations that the Product was "plastic-free" and "the world's purest baby wipes" that the Product was merchantable and fit for their ordinary purpose—namely, safe and effective use on newborns and young children. Under common law principles recognized in all states, an implied warranty of merchantability ensures that a product is of acceptable quality, free from defects, and conforms to the reasonable expectations of consumers.

118.    Testing, however, reveals that the Product contains significant levels of microplastics, which contradicts its advertised purpose and raises serious health concerns, particularly for infants and young children. Microplastic exposure has been linked to potential long-term health risks, and children are especially vulnerable to toxic exposure due to their developing bodies and increased susceptibility to bioaccumulation.

119.    Because the Product fails to conform to consumer expectations and is not fit for its intended use, Defendant has breached the implied warranty of merchantability. As a result of this breach, consumers who purchased the Product did not receive the product they reasonably expected and have suffered harm, including economic losses.

120.    Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they either would not have purchased the Product, would have purchased less of the Product, or would not have been willing to pay the premium price Defendant charged for the Product.

121.    Plaintiff, on behalf of herself and the Class, seeks compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

### COUNT VI
**Unjust Enrichment**
**(on Behalf of Plaintiff Bregvadze and All Class Members)**

122.    Plaintiff Bregvadze realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

123.    Defendant has been unjustly enriched at the expense of consumers by misrepresenting its Product as "plastic-free" and "the world's purest baby wipes" when it in fact

contains significant levels of microplastics. Consumers purchased the Product under the reasonable belief—based on Defendant's representations—that it was free from plastic contaminants and safe for use on newborns and young children.

124.    It would be inequitable for Defendant to retain the benefits of its wrongful conduct without compensating the consumers who purchased the Product under false pretenses. Therefore, Plaintiff and the Class seek restitution and disgorgement of all ill-gotten gains that Defendant obtained through its deceptive marketing and sale of the Product.

125.    Plaintiff, on behalf of herself and the Class, seeks financial restitution, attorney's fees, costs, and any other just and proper relief available under law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bregvadze respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

A.    An order certifying the proposed Class and Subclasses; appointing Plaintiff Bregvadze as representative of the Class and Subclasses; and appointing Plaintiff Bregvadze's undersigned counsel as counsel for the Class and Subclasses;

B.    A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.    An order declaring that Defendant's conduct violates the statutes referenced herein;

D.    An order awarding monetary damages, including actual damages, statutory damages, compensatory, and punitive damages, in the maximum amount provided by law under the common law and the statutes named herein;

E.     An order for prejudgment interest on all amounts awarded;

F.     An order awarding Plaintiff Bregvadze and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

G.     Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff Bregvadze hereby demands a trial by jury.

DATED: March 28, 2028          Respectfully submitted,

**RICHMAN LAW & POLICY**

_____
Kim E. Richman
1 Bridge Street, Suite 83
Irvington, NY 10533
Telephone: (914) 693-2018
krichman@richmanlawpolicy.com

*Attorney for Plaintiff Bregvadze*
*and Proposed Class*