

khlaw.com
415.948.2800

Keller and Heckman LLP
Three Embarcadero Center
Suite 1420
San Francisco, CA  94111

**Writer's Direct Access**
R o h i t  A.  S a b n i s
(415) 948-2807
sabnis@khlaw.com

May 30, 2025

*Via ECF*

Kim E. Richman
Richman Law & Policy
1 Bridge Street, Suite 83
Irvington, NY 10533

Re:   *Nino ("Nina") Bregvadze v. Waterwipes (USA), Inc.*, Case No. 7:25-cv-02586
       Pre-Motion Letter, Individual Practice Rule Section II.A.

Dear Mr. Richman:

Pursuant to the Court's Individual Rules of Practice Section II.A. ("Pre-motion Conferences in Civil Cases"), Defendant Waterwipes (USA), Inc. ("Defendant" or "WaterWipes") submits this pre-motion letter to Plaintiff Nino Bregvadze ("Plaintiff") in advance of an anticipated pre-motion conference regarding Defendant's motion to dismiss Plaintiff's Complaint (Dkt. No. 1) for lack of standing (Rule 12(b)(1)) and failure to state a claim (Rule 12 (b)(6).

As you are aware, the Complaint's principal claim is that Defendant's wipes product is misleadingly labeled as "Plastic Free" when it is allegedly contaminated with microplastics. In our view, the allegations do not establish Article III standing and the theory of deception pled does not meet the "reasonable consumer" standard.  We outline below WaterWipes' arguments with accompanying relevant case law supporting Defendant's position as to why we feel the Complaint fails as a matter of law.

### A.   Plaintiff Fails to Plausibly Allege Injury-In-Fact for Purposes of Article III Standing

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  In a putative class action, the named plaintiff must allege that she was personally injured by defendants' conduct. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005). To establish class standing, a plaintiff must show that (1) "[s]he 'personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,' and (2) ... such conduct implicates 'the same set of concerns'



Kim E. Richman, Esq.
*Bregvadze v. Waterwipes*, Case No. 7:25-cv-02586
May 30, 2025
Page 2

as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Buonasera v. Honest Co.*, Inc., 208 F. Supp. 3d 555, 562 (S.D.N.Y. 2016).

In consumer protection cases alleging a price premium theory of injury based on the alleged presence of a contaminant, as here, injury-in-fact for purposes of Article III standing can be found when the plaintiff plausibly alleges that the product they purchased contained the alleged contaminant. *See Hicks v. L'Oreal U.S.A., Inc.*, No. 23 Civ. 1989 (JPC), 22 Civ. 3926 (JPC), 2024 WL 4252498, at *9 (S.D.N.Y. 2024). The most direct way for a plaintiff to do this is to test their own purchases for the alleged contaminant. *Id*. (*citing Onaka v. Shiseido Ams. Corp.*, No. 21 Civ. 10665 (PAC), 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024). However, and alternatively, "a plaintiff may plausibly allege the presence of a contaminant in the[ir] purchase via indirect means, provided the plaintiff sufficiently [and meaningfully] links the results of [their] independent testing of the same product line to the product they actually purchased." (*Id*. at *9). The ultimate question to be answered by a court at the pleading stage is whether the presence of the alleged contaminant in a product line is so widespread and pervasive to render it plausible that the plaintiff purchased a an allegedly mislabeled [contaminated] product at least once. (*Id*. at *10; *Hernandez v. Wonderful Company LLC*, No. 23-cv-1242 (ER), 2023 WL 9022844, at *5-6 (S.D.N.Y. 2023); *Bell v. Greenbrier Int'l, Inc.*, No. 24-CV-3559 (JMF), 2024 WL 4893270, at *3 (S.D.N.Y. 2024) (holding that "to establish Article III standing, Bell must plausibly allege that the presence of elevated lead in Supreme Ground Cinnamon was so widespread as to render it plausible that she purchased a jar with elevated lead.").

In this case, Plaintiff has failed to allege sufficient facts to plausibly allege that any package of wipes she purchased was actually contaminated with microplastics. First, and while Plaintiff relies on independent laboratory testing to support her allegations that the products contain microplastics, the Complaint does not allege that any of the wipes Plaintiff purchased were tested and determined to contain same. (*Compl*. at ¶ 56). Accordingly, Plaintiff's allegations fail to provide direct proof supporting injury-in-fact.

Second, Plaintiff's allegations of independent testing are insufficient to permit the Court to infer by indirect means that the presence of microplastics in Defendant's wipes was so widespread and pervasive as to render it plausible that Plaintiff purchased a packet with wipes contaminated with microplastics. Plaintiff alleges that she is a resident of New York and purchased Defendants' wipes in 2023 and routinely every two weeks for three months in 2024 from three retail locations in Westchester County, NY. (*Compl.* at ¶¶ 30-31). Plaintiff further alleges that:



Kim E. Richman, Esq.
*Bregvadze v. Waterwipes*, Case No. 7:25-cv-02586
May 30, 2025
Page 3

> 56. Testing facilitated by Plaintiff's counsel and conducted by an independent laboratory found microplastics in the Products at levels 387x the level of microplastic particles in the control (laboratory grade isopropyl alcohol). The testing information is as follows:
>
> **Product Tested:** WaterWipes Original Baby Wipes
>
> **Test Period:** September 27, 2024 to December 16, 2024.
>
> **Laboratory:** Parverio Inc., located in West Henrietta, NY.
>
> **Methodology:** The lab filtered the water from the sample to capture debris particles suspended in the liquid (8 μm slits), performed in a laminar flow hood. The lab then stained the sample with a fluorescent dye to identify which of the small microparticulates were plastic and washed away the residue. Larger fibers and particles are separated automatically into smaller particles through an operation known as watershedding. This operation permits the separation of particles that are adjacent into individual particles, however, larger fibers are separated into smaller particles for counting purposes.

(*Compl*. at ¶ 56).

While these allegations provide some information about the testing, they do not include allegations that courts have found important in determining whether a meaningful link exists between the results of testing and a plaintiff's actual purchases to allow the plausible inference of the presence of unlabeled contaminants. For example, Plaintiff does not allege temporal proximity of the testing to Plaintiff's purchases.[1] The alleged testing took place between the end of September 2024 and mid-December 2024. In contrast, Plaintiff's purchases are alleged to have occurred during 2023 and an unspecified time frame of three months in 2024, which can be inferred to have been in early 2024 assuming continuity with the alleged purchases in 2023. There is also no allegation as to when the samples tested by the lab were purchased and whether they were purchased in the same geographic location as Plaintiff's purchases.

In addition, courts in this district evaluating similar allegations for purposes of standing have held that "[t]he pleading should disclose the number of samples tested, and the testing should involve

---

[1] Temporal proximity of a plaintiff's purchases to independent testing is not sufficient, in and of itself, to support standing. A plaintiff must also plausibly allege that the alleged defects pervaded an entire line or market of products. *Bell*, 2024 WL 4893270, at *4; *Hernandez*, 2023 WL 9022844, at *5-6.



Kim E. Richman, Esq.
*Bregvadze v. Waterwipes*, Case No. 7:25-cv-02586
May 30, 2025
Page 4

more than a small number." See *Hicks*, 2024 WL 4252498, at *10 (*citing Lurenz v. Coca-Cola Company*, No. 22 Civ. 10941 (NSR), 2024 WL 2943834, at *4 (S.D.N.Y. 2024) ("Unlike the plaintiff in *John*, Plaintiff alleges that he tested only a single sample."); *Kell v. Lily's Sweets, LLC, No. 23 Civ. 147 (VM),* 2024 WL 1116651, at *4 (rejecting testing where it was "based on just two or three samples"); *Brown v. Coty, Inc.*, No. 22 Civ. 2696 (AT), 2024 WL 894965, at *4 (S.D.N.Y. 2024) (faulting the plaintiffs for failing to "allege how many lots or tubes of" the products in question "were tested"); *Esquibel v. Colgate-Palmolive Co.*, No. 23 Civ. 742 (LTS), 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023) (critiquing the plaintiffs for failing to allege how many units of the product in question were tested)).

Here, Plaintiff's allegations similarly do not identify if any more than one package of Defendant's wipes were tested and, if so, how many samples were tested, and what percentage of samples allegedly tested positive for microplastics. Indeed, Plaintiff alleges that her lab testing determined that the product contained microplastics at one specific multiple greater than the level of microplastics in the control (387X) implying that wipes from only one package were tested. Plaintiff's allegations thus make it equally plausible that Plaintiff's single or limited test results were false positives or were the result of an isolated incident of contamination and not the result of a "pervasive" or "systematic" practice. See *Lurenz*, 2024 WL 2943834, at *3. Accordingly, the Complaint fails to plausibly allege injury-fact-for purposes of standing.

### B. Plaintiff's Consumer Protection and Warranty Claims Fail to State a Claim Under the "Reasonable Consumer" Test

"Claims for deception [pursuant to General Business Law §§ 349 and 350] and breach of express warranty both depend on what a reasonable consumer would believe, so allegations sufficient to plead one generally suffice to plead the other." *Richardson v. Edgewell Pers. Care, LLC*, No. 23-128, 2023 WL 7130940, at *2 (2d Cir. Oct. 30, 2023) (summary order).

In the context of a motion to dismiss, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have mislead a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "New York courts apply an objective definition of deceptive acts and practices, concerned only with 'those likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (quoting Oswego Laborers, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741). "Accordingly, plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Jessani v. Monini North America, Inc.*, 744 Fed. Appx. 18, 19 (2d Cir. 2018) (*quoting Ebner v. Fresh Inc*., 838 F.3d 958, 965 (9th Cir. 2016)). Instead, "[p]laintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id*.



Courts examining misleading product claims often rely on common sense observations and judicial experience. *See e.g., Weinstein*, 819 F. Supp. 2d at 228. "In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." *Id.* (*citing Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18-CV-2250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019)).

Here, Plaintiff claims that, at the time of purchase, she saw labeling on the product stating that Defendant's wipes are "plastic free" and "the world's purest baby wipes" and "believed it was safe and free from microplastics." Plaintiff further alleges that these representations are deceptive because the product contains significant levels of microplastics and that "[n]o reasonable consumer who sees WaterWipes' representations would expect that its Product exposes them, their babies, or their family to microplastics." (*Compl.* at ¶¶ 32-33, 42, 82, 92, 111, 117, 123). However, and as discussed below, these allegations fail under the reasonable consumer test.

1. **"Plastic Free"**

The Complaint alleges that:



41. Defendant WaterWipes makes affirmative on-package representations about the safety of its Product—namely, that they are "plastic free" and are "the world's purest baby wipes."


Kim E. Richman, Esq.
*Bregvadze v. Waterwipes*, Case No. 7:25-cv-02586
May 30, 2025
Page 6

(*Compl*. at ¶ 41). While the Complaint focuses on the words "Plastic Free" the full claim, as depicted above, is "Plastic Free" with an arrow directed to the word "Wipes*", indicating that the claim is limited in some respect. The asterisk refers the reader to the bottom of the package disclaimer which provides clarifying information stating that:

> *The plastic free claim does not refer to the full product lifecycle nor the external plastic packing and relates to the wipes only. For more information see our website.

(*See also Compl*. at ¶ 48).

In this context, where the presence of plastic in certain components of the product and in the product's full lifecycle are described, reasonable consumers would interpret the claim to be directed to the non-plastic material used to manufacture the wipes and not as a representation that the wipes could never, due to accident or inadvertence, be contaminated with trace microplastics.[2] Indeed, the Complaint itself points to WaterWipes' advertising informing consumers that a change in the material used to manufacture the wipes, from plastic to plant-based, is what rendered them "plastic free." (*Compl*. at ¶42 and fn. 15 (*citing* to a posting on WaterWipes' website indicating that its wipes "Are now Plant-based and Plastic Free")).

And, to clarify any ambiguity as to the scope of the "Plastic Free -Wipes*" claim, the asterisk disclaimer states that the "external plastic packing" is in fact composed of plastic and that, in other stages of the wipes' lifecycle, the wipes may encounter plastics. Plaintiff further alleges that microplastics are pervasive and widespread in the environment. (*Compl*. at ¶¶ 13-14). In this context, consumers could reasonably interpret the "Plastic Free – Wipes*" claim to mean that the material used to manufacture the wipes is not composed of plastic but could not reasonably interpret it to guarantee that the wipes could in no instance be contaminated with trace amounts of microplastics. Based on the foregoing, Plaintiff has failed to allege the falsity of and that a reasonable consumer would be materially misled by Defendant's packaging.

2. **"The world's purest baby wipes"**

The Complaint fails to plausibly allege any facts indicating that the product, when compared to other similar products, are not the "world's purest baby wipes." There is no allegation that other similar products are purer than Defendant's. In addition, the National Advertising Division has held that this

---

[2] Defendant does not concede that its products were contaminated.



Kim E. Richman, Esq.
*Bregvadze v. Waterwipes*, Case No. 7:25-cv-02586
May 30, 2025
Page 7

claim is substantiated. *WaterWipes*, NAD No. 7086, at 11, 12–13 (July 20, 2022). As such, Plaintiff has failed to plausibly allege that this claim is false and that a reasonable consumer would be misled.

### C. Plaintiff's Claims for Breach of Express Warranty and Breach of Implied Warranty Fail as a Matter of Law

The Complaint fails to identify the specific applicable state law under which these claims are alleged and should be dismissed for that reason alone. In any event, and under New York law, express and implied breach of warranty claims seeking to recover for financial injuries require a showing of privity between the manufacturer and the plaintiff unless an exception applies. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023).

In this case, Plaintiff's express and implied warranty claims fail to plead plausible allegations of privity between Plaintiff and Defendant or that an exception applies. Instead, Plaintiff alleges that she purchased the subject product at three retail locations in Westchester County. (*Complaint* at ¶ 31). Accordingly, these claims fail as a matter of law.

### D. Plaintiff's Claim for Unjust Enrichment Fails as a Matter of Law

The Complaint fails to identify the specific applicable state law under which this claim is alleged and should be dismissed for that reason alone. In addition, Plaintiff's unjust enrichment claim relies on all the same allegations and is entirely duplicative of her other causes of action and should be dismissed. *Id.* at ¶¶122-125; *Sarr v. BEF Foods, Inc., No. 18-cv-6409 (ARR) (RLM)*, 2020 WL 729883, *10 (E.D.N.Y. 2020) (collecting cases and noting, "[d]istrict courts in this circuit have dismissed unjust enrichment claims when they have relied on the same facts as the plaintiffs' other asserted causes of action.")

### E. Proposed Briefing Schedule

Following our prior meet and confer, the parties propose and request the following briefing schedule on Defendant's motion to dismiss:

- July 21, 2025:         Defendant's Response/Motion to Dismiss
- September 19, 2025:    Plaintiff's Opposition
- October 20, 2025:      Defendant's Reply



Kim E. Richman, Esq.
*Bregvadze v. Waterwipes*, Case No. 7:25-cv-02586
May 30, 2025
Page 8

                                      Respectfully submitted,

                                      */s/ Rohit A. Sabnis*
                                      Rohit A. Sabnis – Admitted Pro Hac Vice
                                      Sam Butler – Admitted Pro Hac Vice
                                      Keller & Heckman LLP
                                      Three Embarcedero Center, Suite 1420
                                      San Francisco, CA 94111
                                      Phone: 415-948-2807
                                      Email: sabnis@khlaw.com
                                      *Counsel for Defendant*

Cc:  Via ECF

The Honorable Kenneth M. Karas
United States District Court Judge
Southern District of New York
The Hon. Charles L. Brieant Jr. - Federal Building and United States Courthouse
300 Quarropas St., Courtroom 521
White Plains, NY 10601-4150